J-A13040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE F. FELTON, EXECUTRIX OF THE ESTATE OF MICHAELEEN LEE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 778 WDA 2025 |
| | : | |
| JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS INC.; JOHNSON & JOHNSON HOLDCO (NA) INC., KENVUE, INC. | : | |

Appeal from the Judgment Entered September 3, 2025
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-23-008055

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: July 7, 2026**

Michelle F. Felton (Appellant), executrix of the Estate of Michaeleen Lee, Deceased (Decedent),[1] appeals from the denial of her request for a new trial.[2] After careful consideration, we affirm.

On June 29, 2023, Decedent filed a complaint against Johnson & Johnson; Janssen Pharmaceuticals Inc.; Johnson & Johnson Holdco (NA) Inc.; and Kenvue, Inc. (collectively, Defendants).  Decedent claimed that she

---

[1] Appellant was substituted as plaintiff after Decedent's death on November 9, 2023.

[2] On May 13, 2025, the trial court entered an order denying Appellant's post-trial motion, and Appellant praeciped for entry of judgment on September 3, 2025.

suffered from mesothelioma that was caused by asbestos in the talcum powder sold by Defendants.

A jury trial was held over the course of several weeks, from November 11, 2024 to January 6, 2025. On the last day of trial, the trial court and counsel discussed "an issue … with the verdict slip." N.T., 1/6/25, at 3. The court recognized that its verdict slip improperly instructed the jury to consider compensatory and punitive damages regardless of whether they found that Defendants caused Decedent's mesothelioma. The court stated:

> We worked a little bit with this. What we've come up with is the following, that at the end of Question 7 it would read as follows: Only proceed to Question 8 if any of the following has occurred: (A) if you've answered yes for any entity at Questions 1 and 2 and/or if you've answered yes for both Questions 4 and 5 and/or if you've answered yes for both Questions 6 and 7. So it seems that that covers that if [Appellant] gets liability on all the causes of action or one, we go to compensatory damages. Then I believe as it reads now with regard to the punitive damages, it reads appropriately.

*Id.*

Defendants' counsel expressed concern with the trial court's revisions. He anticipated that the jury could find Defendants not liable, but "still consider whether punitive damages are warranted against [Defendants] and that's not right." N.T. at 5. Defendants' counsel stated, "this is getting a little bit cumbersome and my proposal is easier to understand for the jury." *Id.* at 6. However, the court did not adopt counsel's proposal. The court said, "we can do it that way but wouldn't the simpler way to do this be that if the jury doesn't find liability as to [Defendants] and for whatever reason goes to punitive

- 2 -

damages, I mean wouldn't I just mold the verdict and say it's an invalid award of damages?" *Id.* at 6-7. As Defendants observe, Appellant's counsel "did not object to the court's plan." Defendants' Brief at 8.

Later that day, the jury issued its verdict. The jury found Defendants had not caused Decedent's mesothelioma, but awarded her estate $22 million dollars in punitive damages. Upon hearing the verdict, the trial court stated that it needed to speak with counsel. The court told counsel, "I thought our instructions were clear, maybe they weren't." N.T. at 261. The court added, "I think I know what we should do but I want to hear it from the parties." *Id.* Defendants' counsel reiterated that the verdict form "was confusing" and the "problem [wa]s not the jurors, it[ wa]s the instruction." *Id.* at 265. When the court agreed "the error [wa]s in the slip," Appellant's counsel suggested, "if the [c]ourt believes there is an error the way the verdict slip is misunderstood, … we need to clarify that with them." *Id.* at 266-67. The court rejected the suggestion, and repeated that the jury "clearly reached no causation before they addressed any damages." *Id.* at 271. The court concluded, "I'll poll the jury. That is all I'm going to do." *Id.* at 273. The court then asked that the jury be returned to the courtroom. *Id.* at 274. After polling the jury, the court "mold[ed] the verdict, which found for Defendants and awarded [Appellant] no damages." Trial Court Opinion (TCO), 10/22/25, at 4.

On January 15, 2025, Appellant filed a post-trial motion seeking a new trial. The trial court reviewed the parties' briefs and heard oral argument

- 3 -

before denying the motion on May 13, 2025. On June 11, 2025, Appellant filed a notice of appeal, followed by a court-ordered concise statement on July 1, 2025.

Appellant presents the following questions for our review:

1. Given the jury's verdict was inconsistent, should the trial court have either asked the jury to clarify its verdict or ordered a new trial?

2. Should the trial court have precluded Defendants' experts from testifying outside the scope of or in contradiction to their disclosed opinions?

3. Should the trial court have precluded Defendants' fact witnesses from testifying about scientific, technical, or other specialized knowledge?

4. Should the trial court have prohibited Defendants from questioning one of [Appellant's] experts about a physical confrontation when Defendants represented to [Appellant] they would not raise the issue, and the physical altercation had nothing to do with the merits of the case and was unduly prejudicial?

5. Should the trial court have precluded Defendants from introducing Complaints and an e-mail from [Decedent's] counsel from a prior case?

6. Should the trial court have precluded Defendants from designating its questioning of [Decedent] about why she brought this matter in Allegheny county?

Appellant's Brief at 3-5.

In her first question, Appellant asserts that the trial court erred "by failing to have the jury clarify or correct its ambiguous and inconsistent verdict or order a new trial based on that inconsistent verdict." Appellant's Brief at 13. To the contrary, Defendants maintain that the court "correctly molded the verdict because the jury's intent on causation was clear, notwithstanding

the errant award of punitive damages." Defendants' Brief at 1. Defendants reiterate that the jury found no causation on any of Appellant's claims against Defendants. They state that the jury "mistakenly answered the questions on punitive damages because the directions not to do so absent causation on one of the underlying claims were buried below the question concerning compensatory damages on the preceding page—a question and page the jury correctly skipped because it found no causation." *Id.* at 19.

"Our standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion." *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1226 (Pa. Super. 2011) (citation omitted). "It is beyond peradventure that the trial judge has the power to mold a jury's verdict." *Krock v. Chroust*, 478 A.2d 1376, 1380 (Pa. Super. 1984) (citations omitted). "The power to mold or, more precisely, amend a jury's verdict is merely a power to 'make the record accord with the facts, or to cause the verdict to speak the truth.'" *House of Pasta, Inc. v. Mayo*, 449 A.2d 697, 702 (Pa. Super. 1982) (citation omitted). The rationale supporting the trial court's discretion is that "[v]erdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial." *Mendralla v. Weaver Corp.*, 703 A.2d 480, 486 (Pa. Super. 1997) (citing *House of Pasta, supra*, at 701).

Here, we discern no error. The trial court advised the parties that it would mold the verdict in the event of an inconsistent verdict. **See** N.T. at 6-7 (stating that if the jury did not find causation, "and for whatever reason goes to punitive damages, I mean wouldn't I just mold the verdict and say it's an invalid award of damages?"); **see also McDermott v. Biddle**, 674 A.2d 665, 667 (Pa. 1996) (recognizing "the presumption that jury verdicts are consistent, that is, consistency will be presumed unless there is no reasonable theory to support the jury's verdict."). In its opinion, the trial court has properly and thoroughly expanded on the issue. **See** TCO at 7-14. For example, the court states:

> The question of jury intent in this case takes an interesting cast, in that if anything the jury made its intent all too clear. There is little doubt that the jury intended to find that [Appellant] had not proven causation between [Decedent's] mesothelioma and Defendants' actions[, as] the jury denied the existence of causation on three separate occasions, making any uncertainty on the part of the jury on that point exceedingly unlikely. It seems just as clear that the jury, believing it had to decide the issue, chose to award [Appellant] punitive damages against Defendants. Faced with mutually exclusive findings within the verdict, the [c]ourt sought to preserve as much of the jury's decision as possible and issued a molded verdict enacting the jury's finding of fact that Defendants' conduct did not give rise to [Appellant's] injuries, since causation must be found for the Court to award damages.

TCO at 7 (citation omitted).

In addition, the trial court has capably addressed Appellant's remaining questions which assail the court's evidentiary rulings. Appellant claims the jury was influenced by "inappropriate expert opinions" and "irrelevant and

prejudicial evidence." Appellant's Brief at 15. Conversely, Defendants observe that the trial court "made countless rulings that went both ways," and "carefully assessed every objection raised by the parties and then exercised its broad discretion to address the individual circumstances of each issue." Defendants' Brief at 1, 5. We agree with Defendants.

> When we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Risperdal Litig. W.C. v. Janssen Pharms., Inc.*, 174 A.3d 1110, 1118 (Pa. Super. 2017) (citation omitted).

Our review reveals that the trial court properly exercised its discretion on evidentiary matters. In addition, we agree with the court's determination that even if its "evidentiary decisions amounted to error, [Appellant] has not shown prejudice that would place said error outside the scope of the harmless error doctrine." TCO at 25. After "careful review of the facts and law involved," the court found "no persuasive indication that it applied the law so erroneously, or made decisions that were so unfounded and prejudicial to [Appellant] that an abuse of discretion was committed." *Id.* at 26-27.

Accordingly, and for the above reasons, we adopt the trial court's October 22, 2025 opinion in disposing of Appellant's questions and affirming the denial of her request for a new trial.[3]

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/07/2026

---

[3] In addressing Appellant's questions, the trial court "count[ed] a total of 9 issues raised by [Appellant], taking into account all sub-issues," which it "attempt[ed] to condense … where possible."  TCO at 4 n.1.

# Allegheny County - Department of Court Records
## Civil Division - Filings Information

**County caseID:GD-23-008055**
**Case Description:Lee vs Acme Markets Inc. etal**
**Official Docket Entry, Sort By Document Number Ascending**

| Document Number | Filed Date | Title/Entry | Entry Classification | Filed By |
|---|---|---|---|---|
| 1 | 10/22/2025 | Opinion | Official Docket Entry | Philip Algnelzi |

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNNSYLVANIA

MICHELLE FELTON, Executrix of
the Estate of MICHALEEN LEE, Decedent,

        Plaintiff,

        v.

JOHNSON & JOHNSON *et al.*,

        Defendants.

CIVIL DIVISION—COMPLEX

Case No. GD 23-008055

## Opinion

## I. Factual Background

This case stems from Decedent Michaeleen P. Lee being diagnosed with epithelioid mesothelioma, a rare form of lung cancer which Plaintiff claims is directly related to asbestos exposure, on November 28, 2022. Plaintiff's Complaint at 23. Plaintiff claims this diagnosis to be the outcome of exposure to talc products containing asbestos and silica from the 1940s through 2015, a result of Plaintiff's using such products as talcum and baby powder on herself and family members. *Id.*. Plaintiff commenced the action at issue with a 7-count complaint filed June 29, 2023 against several retail and manufacturing entities involved in the making and

1

distribution of talc products. The jury ultimately considered counts of negligence; gross, willful and wanton misconduct; and fraudulent misrepresentation.

As part of the complaint Plaintiff sought compensatory damages under the theory that Plaintiff was harmed "as a direct and proximate result of the actions of the defendants [...] and the inhalation of asbestos fibers from the Product Defendants' produc`s". *Id.* at 48. Plaintiff also sought punitive damages, to be awarded as result of Defendants' actions being "willful, wanton, gross and in total disregard of the health and safety of the users and consumers of their products." *Id.* at 49. Defendants put forth affirmative defenses, includ ng that Plaintiff's injuries were caused as a result of working as a chemistry professor at Bucks County Community College (BCCC) and that Plaintiff's illness developed separately and independently. Defendants filed expert reports considering both possibilities, and presented testimony related to the same. With regards to BCCC, Defendants claimed, in part, that Plaintiff had been exposed to asbestos from lab equipment and flaking insulation there. Defendants' Brief in opp. to P. SMJ, p. 11.

At trial, Defense expert witnesses Dr. Attanoos and Dr. Sanchez were introduced primarily to speak to issues unrelated to Bucks County Community College and Plaintiff's activities there. However, Defendants introduced testimony from Dr. Attanoos limited to expressing that evidence that BCCC's abatement records with regards to asbestos caused him "great concern." Trial Tr. 1/3/2025 (AM) at 12:9-13. Similarly, Dr. Sanchez was allowed to give testimony regarding testing for asbestos done by BCCC without speaking to causation. Trial Tr. 1/2/2025 (PM) at 6:24–7:14. Defendant objected to both witnesses' testimony related to BCCC. Plaintiff also objected to the introduction of Defense witnesses Drs. Kaffner and Hopkins' testimony regarding scientific methodology and data during cross examination. This Court

2

allowed both witnesses' testimony as within the scope of cross examination following Plaintiff's direct questioning.

Defendants additionally introduced an email from Plaintiff's former attorney wherein the attorney opined on the likelihood that Plaintiff's time at BCCC was the source of her illness in the context of a previous action Plaintiff had initiated against other parties related to Plaintiff's work at BCCC and BCCC's use of asbestos. None of those parties sued are named defendants in the case before this Court. Defendants also introduced Plaintiff's complaint from the same case. This Court admitted the email over Plaintiff's objection to be used to rebut statements Plaintiff made regarding that attorney's investigation of BCCC and the asbestos exposure involved. Trial Tr. 11/25/2024 (PM) at 5:12-20. Similarly, the Court determined that Plaintiff's endorsement of the complaint could be used as a party opponent statement. Trial Tr. 11/15/2024 60:11-23, 73:18-74:2. Finally, Defendants cross-examined Plaintiff witness Dr. Longo regarding his arrest resulting from an altercation at a scientific conference; this Court allowed Defendants to introduce evidence of the arrest over Plaintiff's objection provided Defendants used the evidence to elicit testimony related to Dr. Longo's reputation as an expert. Trial Tr. 12/18/2024 at 117:15-118:6.

Plaintiff's first error count is a result of the jury rendering a verdict that was contradictory on its face, finding as it did both that Defendants both did not cause Dr. Lee's injuries and that punitive damages totaling $22 million should be awarded to Plaintiff as a result of Defendants' actions. This Court expressed some confusion, Trial Tr. 1/6/25 at 261;16-17, and considered objections from both Defendants' and Plaintiff's counsel. Plaintiff argued at trial that the verdict was inconsistent and that the jury should be asked to clarify its verdict. Trial Tr. 1/6/25 at 263:22-267:10. The Court surmised that the verdict slip's special verdict questions assessing punitive

3

damages (question 9) and last question addressing liability (question 7) lacked language making it clear to the jury that the question of punitive damages should not be considered if no liability has been found. Defendant's Brief in Opp. at 7-9; Trial Tr. 1/6/2025 266:25-267:1, 269:18-270:2. The issue had been addressed by the Court with regards to question 8 prior to the verdict being reached, at which time the Court asserted that a molded verdict would cure any mistakes owed to the drafting of questions 7 and 9. *Id.* at 5:10-8:7. After overruling Plaintiff, this Court filed a verdict form dated 01/08/25 molding the verdict, which found for Defendants and awarded Plaintiff no damages.

Plaintiff filed a motion for post-trial relief in the form of a new trial on 1/15/25; in it Plaintiff avers 3 issues in support: a) the jury 's verdict was ambiguous and inconsistent given the jury's both awarding damages to Plaintiff and finding for Defendant with regards to whether there was causation between Defendants' acts and Plaintiff's injury; b) Defendants' expert witnesses Dr. Sanchez and Dr. Anoos presented testimony at trial outside the scope of what their disclosed reports covered in violation of Pa.R.C.P. 4003.5(c), and fact witnesses Dr. Kuffner and Dr. Hopkins gave expert opinion testimony in violation of Pa.R.E. 701(c); and c) Defendants improperly introduced prejudicial evidence at trial. Plaintiff's Motion for Post-Trial Relief at 4-12.[1]

---

[1] In all, this court counts a total of 9 issues raised by Plaintiff, taking into account all sub-issues. This Court finds it prudent to quote:

> the view of an eminent appellate jurist, Judge Ruggero Aldisert, that the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid. As Judge Aldisert puts it, 'Appellate advocacy is measured by effectiveness, not loquaciousness.'

*Commonwealth v. Ellis,* 626 A.2d 1137, 1140-41 (Pa. 1993) citing, *The Appellate Bar: Professional Competence and Professional Responsibility-A View from the Jaundiced Eye of One Appellate Judge,* 11 Cap.U.L.Rev. 445, 458 (1982).

This Court will attempt to condense claims where possible.

## II. Analysis

### A. Issue #1

The standard under which a judge's decision whether to grant a new trial is evaluated requires a clear abuse of discretion or error of law by the court. *Chiaverini v. Sewickley Valley Hosp.*, 409 Pa. Super. 630, 633 (Pa. Super. 1991); *Blicha v. Jacks*, 864 A.2d 1214, 1218 (Pa. Super. 2004). This standard will regiment the Court's analysis of all three of Plaintiff's averred errors, and Plaintiff bears the burden of proof of showing either abuse of discretion or error of law. *Daddona v. Thind*, 891 A.2d 786, 805 14 (Pa. Commw. Ct. 2006) (with regards to admitting expert testimony); *Koch v. Franklin*, 315 Pa. 145, 147 (Pa. 1934) (burden of proof is Plaintiff's). Clear abuse of discretion is more specifically defined as "a misapplication of the law, a manifestly unreasonable exercise in judgment, or a final result that evidences partiality, prejudice, bias, or ill-will." *Allegheny County v. Golf Resort, Inc.*, 974 A.2d 1242, 1245 (Pa. Super. 2009). It should also be noted that, although a potential remedy for an inconsistent verdict, a trial court's power to grant a new trial is strictly circumscribed in accordance with the law's general reluctance to upset or overturn a duly deliberated verdict rendered by a jury. *Criswell v. King*, 575 Pa. 34, 834 A.2d 505, 512–13 (Pa. 2003). A trial court responding to a request for a new trial must first determine whether any mistakes were made at trial, and if so, whether those mistakes warrant ordering a new trial. *Harman ex rel. Harman v. Borah*, 562 Pa.

455, 467 (Pa. 2000). This Court sees no evidence that would amount to either a clear abuse of discretion or error of law, with regards both to this Court's evidentiary rulings and molded verdict. It cannot therefore conclude that an appellate court would find for Plaintiff in her requests for a new trial.

As noted by both parties' brief in support and opposition to a new trial, the relevant inquiry when assessing whether a molded verdict is proper when a jury returns a contradictory verdict is the extent to which the verdict evinces a clear intent on the part of the jury. A molded verdict is meant to give voice to what the jury clearly intends: "the verdict to be molded must manifest a clear intent on the part of the jury." *Krock v. Chroust*, 330 Pa.Super. 108, 116 (Pa. Super. 1984). As such, molding a verdict is regarded as "a power to 'make the record accord with the facts, or to cause the verdict to speak the truth.'" *Id.*, quoting Pennsylvania Practice (Rev. Ed.) Ch. 27, § 72 at 568. When the Court can determine the jury's intent, it has the well-established discretion to issue a molded verdict. *See*, for example, *Ferrick Excavating and Grading v. Senger Trucking Co.*, 315 Pa.Super. 69, 77 (Pa. Super. 1983). This power of the Court complements the well-established presumption that a jury's verdict is consistent unless no reasonable theory is available to support a verdict. *See Hornak v. Pittsburgh Railways Co.*, 143 Pa. 169, 175 (Pa. 1969). Similarly, the Court in deciding whether to mold a verdict is limited to considering facts that are discernable from the verdict itself. *Krock v. Chroust*, 330 Pa. Super. at 116; *May v. Pittsburgh Railways Co.*, 209 Pa.Super. 126, 129 (Pa. Super. 1966). The molded verdict, as a result, must implement the clear intent of the jury and will not be valid if the Court assumes facts extrinsic to the verdict itself in doing so. As aforementioned, just like for any judicial decision to be reviewed under a clear abuse of discretion standard, "if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly

6

unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Mielcuszny v. Rosol*, 317 Pa. 91, 93-94 (Pa. 1934). Case law places the ability to adjust damages specifically as part of a molded verdict within the scope of the court's power to mold a verdict. *See Pusl v. Means*, 982 A.2d 550, 556-57 (Pa. Super. 2009) (Trial court was within discretion to adjust damages based on statute and public policy); *Mendralla v. Weaver Corp.*, 703 A.2d 480, 486 (Pa. Super. 1997) (Molded verdict properly barred type of damages impermissibly awarded by jury).

The question of jury intent in this case takes an interesting cast, in that if anything the jury made its intent all too clear. There is little doubt that the jury intended to find that Plaintiff had not proven causation between Dr. Lee's suffering from mesothelioma and Defendants' actions: as Defendants correctly point out in their brief, the jury denied the existence of causation on three separate occasions, making any uncertainty on the part of the jury on that point exceedingly unlikely. Defendants' Brief in Opposition to Plaintiff's Motion for Post-Trial Relief, p. 5. It seems just as clear that the jury, believing it had to decide the issue, chose to award Plaintiff punitive damages against Defendants. Faced with mutually exclusive findings within the verdict, the Court sought to preserve as much of the jury's decision as possible and issued a molded verdict enacting the jury's finding of fact that Defendants' conduct did not give rise to Plaintiff's injuries, since causation must be found for the Court to award damages.

In rendering their verdict in this case, the jury considered the elements of negligence and whether they applied to Defendants' conduct; finding a defendant negligent requires the jury to find "(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a **causal** connection between the

7

conduct and the resulting injury; (4) actual loss or damage resulting to the plaintiff." (emphasis added). *R.W. v. Manzek*, 585 Pa. 335, 346 (Pa. 2005). Each element is necessary for a defendant to incur liability, and although damages do not necessarily flow from a jury's finding of liability, liability must be found in order to award damages. *See* Pennsylvania Practice, 4 PAPRAC § 12.1, "Damages in Tort Actions Generally".

The jury's verdict slip contained nine questions. Ct. Ex. 23, Verdict Slip. Question 2 addressed causation for the negligence claim. *Id.*, Question 2. Question 5 addressed causation on the claim of detrimental reliance on any statement of material fact made to conceal or omit material information by Johnson & Johnson about the safety of the product at issue. *Id.*, Question 5. Question 7 addressed causation as to detrimental reliance on any statement or conduct of material fact intentionally or negligently made by Johnson & Johnson misrepresenting the safety of the product at issue. *Id.*, Question 7. As to all causation questions-- questions 2, 5, and 7-- the jury answered No. Thus, there was no dispute the jury found against the Plaintiff on the issue of causation on all causes of action. In light of these findings by the jury, there should have been no consideration by the jury of any types of damages, either compensatory or punitive damages. Unfortunately, the instructions on the Verdict Slip either confused or misdirected the jury.

As is the Court's practice in every jury trial, before the verdict was read by the jury, the Court reviewed the Verdict Slip to ensure it was properly followed, filled out, signed by the foreperson, and dated. Trial Tr. 1/6/25 at 261:4-12. Immediately, the Court identified the problem with the Verdict Slip and sent the jury back to the jury room. *Id.* Outside the presence of the jury, the Court sought the advice and counsel of the attorneys. *Id.* at 261:4-273:19. During the discussion, it became clear why this occurred. *Id.* at 266:15-268:24; 269:18-270:2. Question 7 on

8

the Verdict Slip, the final question before a determination of damages, instructed the jury as follows:

> Only proceed to Question 8 if any of the following have occurred:
>
> a. If you have answered "YES" for any entity at Question 1 & 2 and/or;
> b. If you answered "YES" for both Questions 4 & 5; and/or
> c. If you answered "YES" for both Questions 6 & 7.

Ct. Ex. 23, Verdict Slip, Question 7 at 4.

Since the jury answered No to questions 2, 5, and 7, the jury never went to question 8, which was the compensatory damage question. By not going to question 8, and moving to question 9, the jury did not read the instruction at the bottom of question 8 which stated the following:

> Please proceed to Question 9 only if you have answered one of the following as to Johnson & Johnson:
>
> a. "YES" as to Johnson & Johnson on Questions 1 & 2; and/or
> b. "YES" as to Questions 4 & 5; and/or
> c. "YES" as to Questions 6 & 7.

*Id.*

What should have occurred is the Verdict Slip, at the end of question 7, should have instructed the jury to not consider both questions 8 and 9 if they had not fulfilled the conditions for going to question 8. Reiterating, this was fully identified by the Court and counsel. *Id.* at 266:15-268:24; 269:18-270:2.

Plaintiff's counsel argued that the jury should be brought back and questioned as to what their intent was, which clearly would violate the province of the jury. *Id.* at 270:16-273:12. At that point, the Court was convinced the only proper procedure was to poll the jury if any party so desired and mold the verdict. *Id.* at 270:12-15, 273:16-19; 280:8-281:1 (molding). The Court,

9

having earlier indicated it would mold a verdict that erroneously awarded punitive damages, took the action consistent with that conclusion and molded the verdict.

By issuing a verdict that barred damages because no causation had been found, the Court applied a principle of law. It did so without assuming facts unascertainable from the verdict or considering questions which were not before the jury, nor did the Court have to consider questions not posed to the jury in molding the verdict. *Diamond design Inc. v. Blair*, 2024 WL 589532 at 5 (Pa. Super. 2024). Because causation is an element necessary to incurring the legal liability which gives rise to damages, and therefore a threshold issue, the jury's finding insufficient evidence of causation meant the issue of punitive damages never should have been reached. Making a determination of law in order to mold a verdict is within the scope of a trial court's powers to resolve legal questions. *See House of Pasta. Inc v. Mayo*, 449 A.2d 697, 704 (Pa. Super. 1982) (Court can only mold verdict to avoid "incorrect result"); *Mendralla v. Weaver*, 703 A.2d at 486 (Court's adjustment of damages was within power to mold a verdict since it did not have to speculate as to how to amend damages); *Kowal v. Com., Dept. of Transp.*, 515 A.2d 116, 119 (Pa. Cmwlth. 1986) (Court was obligated to mold verdict in accordance with statutory damages limit); *Criswell v. King*, 834 A.at 512–13 (2003) (Province of jury's fact-finding role is strict and almost exclusive, and court should only upset a jury verdict based on factual considerations is reserved for extreme circumstances); *Mizirio v. Joseph*, 4 A.3d 1073, 1089-90 (Pa. Super. 2010) (Trial judge properly struck damage award using molded verdict to bring verdict in line with the law). The Court did not impinge upon the jury's role as a fact finder: rather, it considered the verdict's finding of punitive damages and barred it as legally unsound, without speculating as to the jury's intent or resorting to any facts extrinsic to the verdict. *See Daley v. John Wanamaker inc*, 464 A.2d 355, 357-358 (Pa. Super. 1983) (Trial court's

10

modification of a jury's damages award is abuse of discretion if court must endeavor to determine facts to make adjustment, or if jury's award does not amount to an error of law); *Prather v. H-K Corp.*, 423 A.2d 385, 389 (Pa. Super. 1980) (Whether an award is substantial or fits the facts is a question for the jury barring extreme cases). This Court therefore does not find evidence of the type of misapplication of law that would amount to a clear abuse of discretion and warrant a new trial.

Similarly, no errors of judgment as to facts are evident in the Court's molding of the verdict, to the extent that this Court was exercising its power to establish a record reflecting the effective result of the jury's findings of facts. No measures taken by the Court made the intent expressed by the jury's findings of facts anything other than "clear and free from doubt." *Mendralla v. Weaver*, 703 A.2d at 486. Where the Court interfered with the jury's findings of fact, it did so to have the record accord with the jury's effective findings.; in finding no causation and therefore no punitive damages, the Court merely gave legal effect to the underlying verdict findings. As such, the Court can find no evidence of clear abuse of discretion as to facts in its molding of the verdict.

Nor did the molded verdict in the instant case force a different result than intended by the jury's clear findings. Pennsylvania case law indicates that a trial court's molding a verdict to reduce or bar damages based on incompatible findings, as here, can result in a verdict that retains the jury's intent where awarding damages would require the Court improperly to speculate. *Gorki v. Smith*, 812 A.2d 683, 708 (Pa. Super. 2002).; *Mendralla v. Weaver*, op. cit). A new trial as a result of judicial abuse of discretion generally requires that the party requesting a new trial suffer some sort of prejudice because of the Court's actions such that a different result would have ensued without them. *Boyle v. Independent Lift Truck, Inc.*, 607 Pa. 311, 318 (Pa. 2010)

11

(Injured party has burden to show prejudice and new trial requires trial court error that affects the verdict); *Com., Dept. of General Services v. U.S. Minerals Products Co.*, 598 Pa. 331, 336 (Pa. 2008) (New trial requires error of law or abuse of discretion that would have affected verdict). Whatever evidence there is that any other court seeking to preserve the jury's verdict would have ruled differently, this Court can find none that amounts to prejudice against plaintiff warranting a new trial. As aforementioned, the Court's molding of the verdict preserves the jury's findings of facts and the intent animating those findings.

Plaintiff was found not to have proven causation, and therefore denied damages, on the merits and according to a jury verdict. This Court acted both within its scope of discretion and its role determining questions of law when it molded a verdict to resolve the contradictory findings noted on the verdict slip. To the extent that the Court chose this remedy over the others available, it did so as a discretionary matter. *Morrison v. Com., Dept. of Welfare, Office of Mental Health*, 538 Pa. 122, 134-136 (Pa. 1994). Its only decision of law was made according to well-settled principles and according to a clear intent expressed by the jury upon deliberation and as recorded in its verdict. As such, Plaintiff's first averred error is supported by neither the record nor the law, including Plaintiff's request for a new trial.

Separate grounds for rejecting Plaintiff's argument exist under the doctrine of waiver. A plaintiff will not waive objections to an inconsistent verdict if the verdict slip does not call for inconsistent answers in its form or language. *City of Philadelphia, Police Dept. v. Gray*, 633 A.2d 1095 (Pa. 1993). In this case, Plaintiff agreed to the drafting of liability and damage questions on the verdict slip; these questions as drafted are very likely to be responsible for the erroneous verdict the jury returned. This entails that an objection to the questions as presented to the jury arose when the instructions were being drafted, and in fact Defendants had argued that

12

leaving instructions to skip punitive damages with the compensatory damages question was inappropriate, at which time Plaintiff made no objection. Trial Tr. 1/6/2025 6:23-7:5. Plaintiff also did not preserve an objection to a molded verdict after this Court raised the possibility that it would be the proper action should punitive damages be awarded with no causation, or after this Court put the molded verdict on the record. *Id.;* Trial Tr. 1/6/2025 280:8-16.

This issue of waiver was also brought up by the Court when discussing post-trial objections with counsel:

> While nobody has argued this, I want somebody to address this. How is this not fully, totally and completely waived with the events of January 6th when I handed out the verdict slip that we all agreed was very complicated. I handed that verdict slip out to
>
> everybody, and I said, okay, the motion is denied, any other issues on the verdict slip? [...[ Now, there was an error in this. The instruction was wrong. You didn't pick it up. How isn't it waived?

Trial Tr. 4/22/25 at 5:24-6:6, 6:11-6:13.

Plaintiff's counsel responded by denying that the verdict was in error, and that there was insufficient evidence that the jury rendered its verdict as a result of mistakenly skipping question 8 as described above. *Id,* at 6:14-15, 6:22-7:1. The Court finds it hard to square this line of argument with Plaintiff's claim that the verdict was inconsistent and prejudicial enough to warrant a new trial. As the Court pointed out during post-trial arguments, there is overwhelming evidence that the verdict slip and jury instructions were deficient, most prominent among which is the fact that the jury came to a verdict that should never have been a possibility. Plaintiff's appeals to jury intent being inscrutable does not undo the fact that the instructions and slip as drafted resulted in a contradictory verdict, and that all parties approved the slip. Far from carrying her burden of proof showing abuse of discretion or reversible error on this Court's part,

13

it is this Court's opinion that Plaintiff did not timely preserve her objection to the verdict slip and as such is not entitled to post-trial relief on that account.

## B. Issue #2

### 1. Scope of Questioning

This issue concerns testimony that four of Defendants' expert witnesses rendered at trial on a wide range of topics. As to Drs. Sanchez, Kuffner and Hopkins, the Court admitted questioning and evidence it found to be within the scope of what Plaintiff had put at issue during direct questioning at trial or as deposition designations. Trial Tr. 1/2/2025 (PM) at 6:24–7:14 (Dr. Sanchez); Trial Tr. 12/9/24 at 209:6-213:15, 219:14-19 (Kuffner); Hopkins Designations from 4/11/2018: 199:10-200:07; 275:14-276:12; 77:02-78:14; 62:22-64:14 (Hopkins). The Court also admitted Dr. Attanoos' testimony upon guarantee by Defendants that Dr. Attanoos would only testify as to the "great concern" evidence of Plaintiff's exposure as a chemistry professor caused him. Trial Tr. 1/3/2025 (AM) at 12:9-13). After review, this Court concludes that all of Plaintiff's averred errors qualify as valid evidentiary decisions identifying a proper scope for expert testimony.

Pa.R.E. 701(c) proscribes any testimony by a lay witness based on the same "scientific, technical or otherwise specialized knowledge" that is the purview of an expert witness as defined under Pa.R.E. 702. Just as is the case with granting a new trial, a trial court's setting the scope of cross examination is within that court's discretion and will stand absent a clear abuse of discretion. *Boucher v. Pennsylvania Hosp.*, 831 A.2d 623, 629 (Pa. Super. 2003). To the extent that a trial court determines testimony, including expert testimony, is admissible, it is making a

14

discretionary decision, as is the case when the court determines whether a party's counsel's argument and presentation of evidence is appropriate. *Commonwealth v. Hart,* 479 Pa. 84, 87, (Pa. 1978); *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 184, 191 (Pa.1963) (Court's decision regarding counsel's presentation of argument is discretionary); *Morrison v. Com.,* 538 Pa. at 135-136). With regards to testimony admitted as part of cross-examination, Pa.R.E. 611(b) allows for testimony on the same subjects covered on direct examination and gives the trial court discretion to admit relevant evidence as if on direct. Finally, evidence proferred to directly contradict opposing evidence (including testimony) has long been available to civil parties as of right under Pennsylvania law if another party has proffered facts or testimony contradicting a party's testimony. *Schoen v. Elsasser,* 172 A. 301, 302 (Pa. 1934); *Mitchell v. Gravely Intern,* 698 A.2d at 620.

Plaintiff first argues that witnesses Drs. Kuffner and Hopkins were not disclosed as expert witnesses, and correctly notes that Defendants introduced these witnesses as fact rather than expert witnesses. Plaintiff's Brief in Support of Post-trial Motion at 14-18. It is also true, however, that the use of testimony within the scope of a cross-examination and to impeach statements or claims made by a witness on direct are generally within a trial court's discretion to admit evidence, even if the testimony admitted is a surprise to the opposing party. *Mitchell v. Gravely Intern,* 698 A.2d 618, 620-621 (Pa. Super. 1997) (it was an abuse of discretion for trial court to grant new trial in part based on trial court admitting rebuttal testimony). More importantly, a trial court should not deem previously undisclosed expert testimony offered by a party in good faith inadmissible unless the complaining party can show they would suffer prejudice from not being able to prepare adequately for the testimony pre-trial. *Green Const. Co. v. Dept. of Transp.,* 643 A.2d 1129, 1139 (Pa. Cmwlth. 1994). Determining prejudice is a fact-

15

based decision to be made by the trial court which involves balancing the facts with each party's circumstances. *Werner v. Department of Public Welfare,* 530 A.2d 1004, 1007 (Pa. Cmwlth. 1987); *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 573 (Pa. 1986). Finally, if the evidence being offered is relevant and there is a question as to the timeliness of disclosing an expert, courts have generally tended to apply Pa.R.C.P. 4003.5 so as to admit rather than reject evidence as the preferable solution to a conflict regarding undisclosed expert evidence. *Clark v. Hoerner,* 525 A.2d 377, 382-383 (Pa. Super. 1987).

As Defendants' brief in opposition to Plaintiff's post-trial motion correctly notes, Plaintiff's direct questioning of Drs. Kuffner and Hopkins covered specialized issues such as industry talc safety studies and scientific literature regarding asbestos contamination in talcum (Defendants' Brief in Opposition at 20-22). This Court therefore admitted testimony that would arguably have been violative of Rules 701(c) and 702 had it not been proffered within the scope of a cross examination. Plaintiff's having placed the testimony within the scope of cross examination also makes the question of whether Drs. Kuffner and Hopkins had been disclosed as expert witnesses in a timely manner irrelevant.

## 2. Discovery and Expert opinion

Plaintiff next argues that Dr. Attanoos' testimony improperly testified to opinion at trial diverging from the conclusion that Dr. Lee's mesothelioma was spontaneous, which is what Dr. Attanoos had submitted in his pre-trial expert report. Plaintiff's Brief in Support of Post-Trial Motion at 3, 8. Dr. Attanoos gave testimony differentiating commercial asbestos from other kinds, the prevalence of asbestos in buildings like that Dr. Lee worked in at BCCC that were

16

built during a particular time period . *See* Trial Tr. 1/3/25 (PM) at 7:3-27:7. Defendants' counsel then elicited testimony from Dr. Attanoos that although he did not see evidence of Dr. Lee's potential exposure at BCCC when drafting his report, which concluded Dr. Lee's illness was spontaneous rather than caused by asbestos exposure, he then received documents that made it more likely Dr. Lee developed mesothelioma as a result of commercial asbestos exposure. *See* Trial Tr. 1/3/25 (PM) at 16:19-18:8. Among these documents were asbestos abatement records from BCCC created in part in response to Dr. Lee alerting BCCC administration to the presence of asbestos. *Id.* On cross, counsel for the plaintiff opened a line of questioning impeaching Dr. Attanoos' claims that pleural mesothelioma was not likely to be linked to commercial talc usage, the notion that exposure to asbestos associated with home products was not likely to cause Plaintiff's illness, and the claims that the concept of spontaneously developed mesothelioma was a scientifically valid occurrence rather than a legal fiction. *See* Trial Tr. 1/3/25 (PM) at 62:14-76:18, 83:13-89:15. Plaintiff's counsel also presented Attanoos with evidence that he had been found to have exceeded his permitted scope of testimony in past cases. Trial Tr. 1/3/25 (PM) at 83:13-89:15.

An expert witness's direct examination is generally to be limited to the fair scope of the pre-trial report that expert may have filed. *Petrasovits v. Kleiner*, 719 A.2d 799, 804 (Pa. Super. 1998). "Fair scope", and Pa. R.C.P. 4003.5's favoring of liberal discovery and aversion to surprise prejudicial testimony, have been interpreted in part to include testimony for which non-movant has had a chance to prepare a meaningful response and which would not mislead non-movant as to the substance of testimony at trial. *Wilkes-Barre Iron & Wire Works, Inc. v. Pargas of Wilkes-Barre, Inc.*, 502 A.2d 210, 212-213 (Pa. Super. 1985). Beyond the aforementioned restriction of Dr. Attanoos' testimony, the report filed by Defendants contained opinion

17

acknowledging Dr. Lee's work at BCCC as a possible cause of her injuries, as this Court acknowledged during trial:

> [Dr. Attanoos] is not giving an opinion. He is saying it causes concern. It, obviously, caused Dr. Lee concern, she told them about it. He isn't telling the jury anything that Dr. Lee didn't say in her records.

Trial Tr.1/3/25 (AM) at 12:9-12:13. *See also* Defendants' Brief In Op.. at 16.

As such, there is a low likelihood that Plaintiff would have been prejudicially surprised by expert testimony related to Dr. Attanoos' opinion regarding Dr. Lee's exposure to asbestos at BCCC, and would have had opportunity to prepare a meaningful response at trial. Indeed, the lines of questioning highlighted above show that Plaintiff's counsel was afforded an opportunity to present what Plaintiff considers to be a discrepancy between Dr. Attanoos's position with regards to Dr. Lee's cause of illness in his report and what he expressed with regards to BCCC exposure having caused the mesothelioma. *See* Trial Tr. 1/3/25 (PM) at 59:10-68:21. The Court therefore cannot be said to have abused its discretion or committed reversible error by admitting testimony well within fair scope as applied to expert testimony related to pre-trial reports.

Similarly, Dr. Sanchez's testimony regarding Bucks County Community College asbestos abatement records upon cross examination by Defendants was admitted subject to the condition that Dr. Sanchez would not provide testimony about a causal link between BCCC's actions and Plaintiff's injuries:

> Mr. Stute (Defendants): I said I would not solicit a causation opinion, but [Dr. Sanchez] certainly has a background in and scientific experience and testing knowledge to give general opinions.
>
> The Court: This issue as far as concern has been put before the jury. As long as we don't go a step further, I'm fine.

Trial Tr. 1/2/25 at 9:16-9:23

As this exchange shows, Defendants were permitted to solicit general opinion testimony based on general background knowledge regarding the possible presence of asbestos at BCCC based on abatement records. Similarly to Dr. Atanoos, Dr. Sanchez gave no opinion as to whether the conditions at BCCC caused Plaintiff's illness, rather giving his general opinion as to the advisability of working under conditions as they were at BCCC with regards to asbestos exposure, based on his technical knowledge of the subject. *See* Trial Tr. 1/2/25 at 9:1-21:13.

Here again, the testimony at issue very well may have fallen under the scope of Rules 701(c) and 702 as expert testimony; having weighed the proposed scope of testimony and the circumstances of each party, however, this Court made a decision within its discretion to include the testimony as redirect once Plaintiff put the abatement records at issue. Having questioned both witnesses on matters directly and indirectly related to knowledge that would qualify as expert testimony pursuant to Rules 701(c) and 702, Plaintiff did not suffer the type of harm or prejudice that this Court can discern as the result of an abuse of discretion or reversible error of law on its part. *McClain ex rel. Thomas v. Welker,* 761 A.2d 155, 156 (Pa.Sup.2000). Indeed, a trial court's discretion to admit evidence if it is competent (material to issues raised at trial) and relevant (tends to prove or disprove a material fact at issues) extends to determining that expert testimony that may have improperly be kept undisclosed is admissible at trial. *Romeo v. Manuel,* 703 A.2d 530, 532 (Pa. Super.1997); *Sprague v. Walter,* 656 A.2d 890, 918 (Pa. Super. 1995); *Turney Media Fuel, Inc. v. Toll Bros., Inc.,* 725 A.2d 836, 839 (Pa. Super. 1999). This is in addition to the aforementioned well-established precedent guaranteeing rebuttal once facts have been proffered discrediting a witness.

Nothing in evidence suggests this Court abused its discretion or committed reversible error that would warrant granting a new trial, nor is there evidence of prejudice to Plaintiff that

would give rise to the same. This Court did make evidentiary judgments with regards to all of the testimony Plaintiff refers to as part of the second error in her motion for post-trial relief, but none fall outside the scope of this Court's discretion as a trial court. As such, Plaintiff's second averred error should not be grounds for awarding post-trial relief.

## C. Issue #3

Plaintiff finally seeks relief with regards to the introduction of evidence by Defendants related to two topics: 1) Dr. Lee's suing various defendants in relation to the manufacturing of chemical equipment, and a related opinion by Dr' Lee's former attorney that that chemical equipment may have caused Dr. Lee's mesothelioma; and 2) the introduction of evidence related to Plaintiff expert witness Dr. Longo's having been arrested following a physical altercation. Plaintiff additionally claims Defendants' questions regarding Dr. Lee's choice of venue were calculated to bias the jury against Dr. Lee as not being a local resident and so prejudicial as to prevent Plaintiff from obtaining a favorable verdict. Plaintiff's brief in support at 22-23. The above determinations regarding a trial court's discretion apply here as they did regarding Plaintiff's claims regarding expert testimony.

After Plaintiff had addressed an opening statement to the jury, Defendants brought a motion to the Court to introduce portions of an email, read aloud to the jury, that expressed an opinion by former counsel for Dr. Lee that her mesothelioma was related to work done at BCCC. Trial Tr. 11/25/2024 at 3:7-7:4. The email had been subject to a ruling by the Court deeming the email privileged and thereby inadmissible, issued in response to a motion *in limine* filed by

20

Plaintiff; in the same order, the Court had admitted use of the complaint served by Dr. Lee as part of the same legal action. *See* Plaintiff's Motion In Limine No. 7 at 1-9, 11; Order 11/15/24 ruling on Motion in Limine No. 7, Count 2. Acknowledging its prior ruling, the Court nonetheless admitted the portion Defendants proposed to have read aloud into evidence:

> You went through in detail why [Dr. Lee] thought it was that, why she filed the suit, they did the investigation and dismissed it. Whether the lawyer thought it, it doesn't make a difference. I'm going to allow it, it's coming in, for that purpose, for what you said.

Trial Tr. 11/25/24 at 5:14-5:20.

As the Court points out, Plaintiff's counsel had made the fact that Dr. Lee had investigated and abandoned the potential for legal action against BCC and others a line of argument in her opening statement, leaving the opinion open for Defendants to rebut:

> [Dr. Lee] hired a lawyer and the first lawyer that she hired had known about people that worked in a lab and had asbestos and so asbestos in the laboratory, that was an exposure, so she filed a lawsuit [...] We also went to Bucks County and said, did you buy this stuff, did you use it [...] and they didn't [...] In this particular scenario we looked at the research, we did the investigation and we couldn't prove the case and we said to ourselves that case is dismissed [...] That resulted in [Dr. Lee] meeting [Plaintiff's counsel].

Trial Tr. 11/25/25 (AM) at 92:12-92:15, 92:23-93:1, 93:3=93:7.

The Court originally refused to admit the email in part because it "involv[ed] the lawyer's opinion as to what caused the plaintiff's disease". Order 11/15/24 on Motion in Limine 7, Count 2. Subsequent to Plaintiff's opening, and as it explains above, the Court concluded that the portion of the email Defendants introduced was now admissible. As the Court explains above, the proposed use of the email as a means to rebut the argument that Dr. Lee was convinced her work at BCCC was responsible for her illness before deciding to dismiss the suit put it outside the scope of its ruling, since it was not to be used for the written opinion of the lawyer that the

21

email contains. Defendants subsequently used both the email and complaint as part of their opening argument. *See* Trial Tr. 11/25/25 at 25:4-29:22.

The Court admitted an email from Dr. Lee's prior attorney and a complaint Dr. Lee had filed in prior litigation. As was the case with many of this Court's evidentiary rulings during trial, the Court did so in response to the trial as it was developing. Defendants had requested admission of the email, which contained evidence that Dr. Lee's counsel at the time believed Dr. Lee developed her illness as a result of her work at Bucks County Community College, after Plaintiff's counsel had developed an argument during opening statements that Plaintiff had considered BCCC as the source of her injuries but her attorneys had decided it was not availing. Plaintiff disputes the admissibility of this email partly on the grounds that Plaintiff's counsel had made arguments involving Dr. Lee's former lawyer during opening statements, which courts in Pennsylvania have found should not be considered evidence. *School District of Philadelphia v. Board of Revision of Taxes*, 217 A.3d 472, 485 (Pa. Cmwlth. 2019; *Com v. Rose*, 960 A.2d 149, 155 (Pa. Super. 2008). As mentioned above, however, a trial court also has discretionary supervision over how counsel for a party may organize or present their argument, including how counsel may use evidence to rebut facts proffered to discredit their case. *Purcell v. Westinghouse Broadcasting Co.*, 411 Pa. at 184, 191 (Pa.1963); *Porter v. Com.*, 309 A.2d 709, 712-713 (Pa. 1973). This is partly a result of the trial court's having been present as the record was being made, and therefore being best placed to determine what a fair and impartial proceeding requires. *Purcell, op. cit.* (Pa. 1963); *Mitchell. V. Gravely*, 698 A.2d at 620 (Pa. Super. 1997); *Morrison v. Com.*, 538 Pa. at 135-136 (Pa. 1994).

A similar conclusion applies to Plaintiff's claim that Defendants designating a line of questioning during Dr. Lee's 2018 deposition that involved why Dr. Lee had chosen Pittsburgh as

22

a venue and whether she was familiar with Pittsburgh. Plaintiff had objected to the introduction of this designation at trial. Trial Tr. 11/26/24 at 84:3-25. The Court's aforementioned ability to evaluate and make decisions regarding a party's structuring or presentation of an argument easily encompasses the decision to let stand this single reference to the venue in which Plaintiff brought suit. *Purcell v. Westinghouse*, 411 Pa. *op. cit.* (Pa. 1963). Should the designation amount to a prejudicial statement, the reference to Decedent's residence was not proffered "solely by an appeal to passion and prejudice" as would be required for a new trial. *Narciso v. Mauch Chunk Tp.*, 87 A.2d 233, 234 (Pa. 1952). At best, Defendants' reference to venue and Decedent's residence would amount to a remark that "may or may not have had a prejudicial effect on the jury", and which is therefore left to the discretion of the trial court. *Id.*. Here again, the Court cannot find evidence that this decision was so prejudicial or erroneous as to warrant a new trial.

This Court does not find that any of the testimony and evidence to which Plaintiff refers exceeded the scope under which they were admitted. Defendants first sought to introduce a letter and email from Plaintiff's former lawyer expressing his opinion that Plaintiff's work at Bucks County Community College could have caused her illness. Defendants introduced these items as rebuttal to Plaintiff's claim during opening arguments that the same lawyer had investigated Plaintiff's time at BCCC and could not prove exposure to asbestos. This Court then admitted the letter and email as within the scope of what Plaintiff had put at issue during opening arguments, admissible to rebut a claim made by a party opponent. Trial Tr. 11/25/2024 (PM) at 4:16-5:20). Nothing this Court can find in the record makes this decision manifestly unreasonable, prejudicial, outside this court's discretion, or erroneous as a matter of law.

The same reasoning applies to this Court's admission of Dr. Lee's complaint in a dropped suit against Bucks County Community College, which this Court admitted as an admission by a

23

party opponent. Trial Tr. 11/15/2024 60:1-23, 73:1-74:2). The complaint contained averments by Plaintiff that involved her employment at BCCC, a fact put at issue by Plaintiff when it was argued that Dr. Lee's prior legal action against entities associated with her time at BCCC was evidence against Plaintiff's having contracted her illness there. The Court determined an authenticated document from prior legal proceedings arising out of the same occurrence remains within the scope of rebuttal; it does not find evidence rendering that decision an error of law or abuse of discretion.

In the case of Dr. Longo, the Court first conducted a full 104 hearing as to the circumstances of the physical altercation Dr. Longo had with another scientist at a conference; the Court ruled that Defendants had a good faith basis for raising the issue of the confrontation. Trial Tr. 12/18/24 at 112:4-118:24. Specifically, the Court permitted Defendants to ask about the incident as a means of questioning Dr. Longo about whether his methodology or reputation had ever been criticized. *Id.* at 112:4-118:6. Defendants' counsel had originally claimed they were not intending to discuss anything related to Dr. Longo's arrest during an April 2024 professional conference. Trial Tr. 12/18/2024 at 4:14-10:3. During questioning about the confrontation, Dr. Longo volunteered the information that he had been thrown down stairs after intending to confront a colleague at a bar during the conference, had been unconscious and handcuffed to a wheelchair, and was charged with trespassing. *Id.* at 130:3-135:2. Defendants then sought to show Dr. Longo a picture of his arrest to impeach Dr. Longo's claim that he had been handcuffed to a wheelchair, which this Court allowed given Dr. Longo's having made a reference to an encounter with the police. *Id.* at 135:4-136:13. Defendants then presented Dr. Longo with the picture and continued cross-examination. Plaintiff included the admission of testimony about the

24

arrest and of the picture of Dr. Longo with police as part of the errors she avers in her motion for Post-Trial relief. Plaintiff's Motion for Post-Trial Relief at 20-21.

The Court permitted Defendants to introduce evidence of Plaintiff expert witness Dr. Longo's confrontation at a scientific conference and arrest as within the scope of cross-examination. Specifically, this Court admitted the evidence to the extent that it related to Dr. Longo's reputation. Trial Tr. 12/18/2024, 9:10-15. At trial, Defendants elicited testimony from Dr. Longo about an altercation he had had during a professional conference that resulted in the police being called and Dr. Longo being briefly detained. This Court had allowed questioning regarding this incident in order to impeach Dr. Longo's credibility as well as proper testimony related to Dr. Longo's reputation. *Purcell v. Westinghouse*, 411 Pa. *op. cit.* (Pa. 1963). Although a trial court may properly bar evidence tending to call an expert's qualifications or contradicting the witness on a collateral issue rather than rebut or impeach the credibility of their testimony, a party may nonetheless proffer evidence upon cross examination of a witness that has undergone adverse direct examination if that evidence tends to diminish the effect of direct. *Gustison v. Ted Smith Floor Products*, 679 A.2d 1304, 1310 (Pa. Super. 1996); *Kemp v. Qualls*, 473 A.2d 1369, 1371 (Pa. Super. 1984).

Assuming nevertheless that any of this Court's evidentiary decisions amounted to error, Plaintiff has not shown prejudice that would place said error outside the scope of the harmless error doctrine. This doctrine "underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Harman ex rel. Harman v. Borah*, 756 A.2d at 1122 (Pa. 2000). Bearing this standard in mind, this Court does not find any evidence of judicial

25

conduct that would equate the kind of mistake courts have determined to be reversible error. Setting aside the issue of this Court's having committed a mistake, Plaintiff has not met the burden to show that any of these alleged mistakes resulted in prejudice sufficient to reverse a trial court decision.

### III. Conclusion

As noted above, and without referring to facts not in evidence, it is plain to this Court that the jury in this case intended to find both that there was no causation between Defendants' acts and Plaintiffs injuries and that Defendants' conduct warranted punitive damages. Because the jury had found there to be no causal relationship between Defendant's conduct and Plaintiff's injuries, however, Defendants were not subject to liability and therefore could not owe punitive damages. The Court therefore decided to issue a molded verdict, one of the available remedies within its discretion, and did so without the need to assume facts not in evidence. As such, the Court's finding for Defendants and awarding Plaintiff no damages did not amount to clear error of law or abuse of discretion and was not unduly prejudicial so as to require a new trial. Similarly, the evidence to which Plaintiff objects in the second and third errors averred was admitted either as evidence rebutting prior testimony or as properly within the scope of what Plaintiff herself had put at issue.

While reasonable minds may differ as to whether the decisions this Court took at trial and in response to the jury's verdict were optimal or preferable to other courses of action, the standard of review at issue remains abuse of discretion by this Court. After careful review of the

26

facts and law involved, this Court finds no persuasive indication that it applied the law so erroneously, or made decisions that were so unfounded and prejudicial to Plaintiff, that an abuse of discretion was committed. Similarly, the record does not contain evidence that any of the averred errors ensured a result other than what an unimpeded course of litigation would have otherwise provided such that a new trial is required. For this and the foregoing reasons, Plaintiff's motion for post-trial relief in the form of a new trial is invalid.

Respectfully Submitted,

10/22/2025

Date

Hon. Philip A. Ignelzi